**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ALISON KAREEM, | ) | CASE NO. 1:20-cv-02457 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| CUYAHOGA COUNTY BOARD OF ELECTIONS, *et al.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon the cross-Motions for Summary Judgment filed by Plaintiff Alison Kareem (R. 27); Defendant Ohio Secretary of State (Secretary of State) (R. 24); and Defendants Cuyahoga County Board of Elections (Board of Elections or Board) and Cuyahoga County Prosecuting Attorney (Prosecuting Attorney) (R. 26). For the following reasons, Plaintiff's Motion is DENIED, and Defendants' Motions are GRANTED.

**I. Procedure**

Plaintiff Alison Kareem's Complaint alleges a civil rights action pursuant to 42 U.S.C. § 1983 against the Secretary of State, Board of Elections, and Prosecuting Attorney (collectively, Defendants). (R. 1, PageID# 1 ¶ 1). Specifically, Plaintiff's Complaint seeks, *inter alia*, declaratory and injunctive relief enjoining the enforcement of Ohio Revised Code

§ 3501.35(A)(4) and § 3599.20 to the extent that they prohibit "the publication by an elector on social media or otherwise of the elector's completed ballot." (*Id.*, PageID# 1–2 ¶¶ 2–5 (referred to by Plaintiff as "ballot selfie(s)"). According to Plaintiff, the prohibition of these "ballot selfies" or pictures of completed ballots, is a violation of her First and Fourteenth Amendment rights. (*Id.*, PageID# 1 ¶ 1).

After completing discovery, the parties filed three separate Motions for Summary Judgment: one from Plaintiff (R. 27); one from the Secretary of State (R. 24); and one jointly from the Board of Elections and Prosecuting Attorney (R. 26). Briefing of these Motions is complete. (R. 30; R. 32; R. 33; R. 34; R. 35; R. 36).[1]

## II. Facts[2]

Plaintiff has been a resident of Ohio since 2009. (R. 24-2, Kareem Depo., PageID# 149). In either 2015 or 2016, Plaintiff voted in a statewide ballot initiative regarding a medical marijuana issue. (*Id.*, PageID# 186–187). Before casting her vote, Plaintiff took a photograph of her completed ballot, and later proceeded to post that picture on her Facebook account. (*Id.*, PageID# 181, 193). After posting the picture of her ballot, Plaintiff read "somewhere" on social media that disseminating "ballot selfies" on social media is a felony in Ohio. (*Id.*, PageID# 184–185). Plaintiff does not recall the author of this information, nor does she remember whether this information was posted generally on social media or as a direct response to her ballot selfie post. (*Id.*, PageID# 185). After researching this issue on the internet and concluding that posting a picture of her ballot to social media would constitute criminal conduct in Ohio, Plaintiff became

---

[1] Defendant Secretary of State also filed a subsequent Notice of Supplemental Authority. (R. 37).
[2] The following factual recitation is undisputed unless otherwise indicated.

nervous about her Facebook post and removed it. (*Id.*, PageID# 182, 185). Plaintiff testifies that she has never received any direct communications—electronic or otherwise—from the government related to any ballot picture or publication. (*Id.*, PageID# 189–191).

Approximately four years later during the 2020 general election, Plaintiff and her brother went to the Board of Elections to vote early. (*Id.*, PageID# 168–169, 204; R. 27, PageID# 524). Before casting her vote, Plaintiff took a picture of herself with her ballot, and Plaintiff's brother took a separate picture of Plaintiff with her ballot. (R. 24-2, Kareem Depo., PageID# 174, 204–205). In these photographs, Plaintiff's completed ballot was visible. (*Id.*, PageID# 204–205). However, Plaintiff testifies that she did not ultimately post these pictures on social media because it would have been "illegal" to do so. (*Id.*, PageID# 174). To reiterate, Plaintiff testifies that she has never received any communications—electronic or otherwise—from any governmental entity related to the pictures she took in 2020 or any other ballot pictures. (*Id.*, PageID# 189–191).

Plaintiff testifies that she does not have any "concrete specific plans" to post a ballot picture in the future, and said that such plans may hinge on the outcome of the instant litigation. (*Id.*, PageID# 200). Plaintiff, in response to the summary judgment motions, filed an affidavit attesting that if state law had not prohibited the dissemination of ballot pictures, she would have posted the pictures of her ballots on the internet in 2020 and would continue to do so in future elections. (R. 28, PageID# 570 ¶ 7).

### III. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Quinn v. Eshem*, 2016 WL 9709498, at *2 (6th Cir. Dec. 20, 2016) ("Summary

judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (internal quotation marks omitted)). There is a genuine dispute as to a material fact when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Non-moving parties may not rest upon the mere allegations in their pleadings nor upon general allegations that issues of fact may exist. *See Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974). Moreover, a party asserting an affirmative defense bears the burden of proof at trial as to the affirmative defense, and thus bears that burden at the summary judgment stage as well. *See, e.g.*, *Wells Fargo Bank, N.A. v. Favino*, 2011 WL 1256847, at *4 (N.D. Ohio Mar. 31, 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). In ruling on a motion for summary judgment, the Court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990).

The standards upon which the Court evaluates motions for summary judgment do not change when, as here, "both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (alteration in original) (quoting *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). The Court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (*quoting Taft*, 929 F.3d at 248).

### IV. Analysis

At the heart of Plaintiff's lawsuit is the contention that two Ohio statutes violate her First and Fourteenth Amendment rights because they criminalize the dissemination or publication of pictures of completed ballots. (R. 27, PageID# 521). The first statute provides, "During an election and the counting of ballots, no person shall . . . [e]xhibit any ticket or ballot which the elector intends to cast." Ohio Rev. Code § 3501.35(A)(4). A violation of this statute constitutes a first-degree misdemeanor. Ohio Rev. Code § 3599.40. The second statute states that it is a fifth-degree felony for any person "being an elector, allow[ing] the elector's ballot to be seen by another . . ., with the apparent intention of letting it be known how the elector is about to vote." Ohio Rev. Code § 3599.20. Plaintiff would have the Court enjoin the enforcement of these statutes to the extent that they prohibit the publishing or dissemination of pictures of a completed ballot on social media or elsewhere, as well as award Plaintiff with nominal damages for the infringement of her constitutional rights. (R. 1, PageID# 2 ¶ 5).

The parties' summary judgment briefing touches on myriad issues, among them: the historical context of voter intimidation and election corruption leading to Ohio's passage of laws as means to protect election integrity, Eleventh Amendment immunity, the establishment of *Monell* liability pursuant to 42 U.S.C. § 1983, and whether the Ohio statutes constitute content-based restrictions on speech and ultimately survive strict or intermediate scrutiny. But before reaching these issues, the Court must consider a more fundamental question—whether Plaintiff has standing to bring this action. The Court, as explained herein, must refrain from reaching these issues because this matter must be dismissed for Plaintiff's lack of standing.

Defendants' Motions for Summary Judgment assert that Plaintiff has failed to establish Article III standing. (R. 24, PageID# 105–111; R. 26, PageID# 327–328). A challenge to a

party's standing is a jurisdictional challenge. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992); *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015) ("Where a plaintiff has no Article III standing to bring a case, jurisdiction is lacking and the court must dismiss it."); *Caudill v. Wells Fargo Home Mortg., Inc.*, 2016 WL 3820195, at *1 (E.D. Ky. July 11, 2016). The jurisdiction of the federal courts is limited by Article III of the Constitution to adjudicating actual "Cases" and "Controversies." *Lujan*, 504 U.S. at 559. Standing is essential to the exercise of jurisdiction, and is a "threshold question . . . [that] determine[es] the power of the court to entertain the suit." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (alterations in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)), *cert. denied*, 517 U.S. 1121 (1996).

The Supreme Court has established that the "irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560–61; *see also Imhoff Inv., L.L.C.,* 792 F.3d at 631; *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 775 (N.D. W. Va. 2017) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016)); *Caudill*, 2016 WL 3820195, at *1 (citing *Lujan*, 504 U.S. at 560–61). First, the plaintiff must have suffered an "injury in fact," a concrete injury to a legally protected interest. *Lujan*, 504 U.S. at 560–61. In other words, "[a]n injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan,* 504 U.S. at 560). Second, there must be a causal connection between the injury and the challenged conduct, "fairly traceable" to the defendant. *Id.* Finally, it must be "likely" that the injury will be redressed by a favorable decision. *Id.* Standing is relaxed in the First Amendment context "because of a judicial prediction or assumption that the policy's very existence may cause others not before the court to refrain from constitutionally

protected speech or expression." *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 330 (6th Cir. 2013) (quoting *Berner v. Delahanty*, 129 F.3d 20, 24 (1st Cir. 1997)).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Moreover, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* This means that, "[i]n response to a summary judgment motion," a plaintiff cannot rely on "mere allegations" with respect to each standing element, "but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (citation omitted).

All Defendants dispute that Plaintiff has suffered an injury in fact, while the Secretary of State also challenges the "causal connection" between Plaintiff's alleged injury and the Secretary of State's challenged conduct. (R. 24, PageID# 106–111; R. 26, PageID# 327–328).

An actual arrest or prosecution is not a prerequisite to challenging these statutes when the individual is subject to "threatened enforcement of the law" by the government. *Susan B. Anthony List*, 573 U.S. at 158–59. Where, as here, Plaintiff has not been arrested, charged, or subject to other enforcement action by the government under either statute, whether Plaintiff has standing to sue "turns upon whether [she] can demonstrate an 'injury in fact' before the state has actually commenced an enforcement proceeding against [her]." *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014); (R. 24-2, Kareem Depo., PageID# 189–190; R. 33, PageID# 610). In a pre-enforcement challenge, the Supreme Court has recognized that an "allegation of future injury may" satisfy the injury-in-fact requirement if the alleged "threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (quoting *Susan B. Anthony List*, 573 U.S. at 158), *cert. denied*, 137 S. Ct.

1229 (2017). Specifically, "a plaintiff satisfies the injury-in-fact requirement in the pre-enforcement context where [i. she] alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and [ii] there exists a credible threat of prosecution thereunder." *Id.* (quoting *Susan B. Anthony List*, 573 U.S. at 159); *see also Plunderbund Media, L.L.C. v. DeWine*, 753 F. App'x 362, 366 (6th Cir. 2018).

Assuming without deciding that Plaintiff has adequately established an intention to engage in conduct arguably affected with a constitutional interest but proscribed by statute, the Court examines whether Plaintiff has established that she faced a credible threat of prosecution under the two Ohio statutes at issue. In the free speech context, the "mere allegations of a subjective chill on protected speech are insufficient" to establish a credible threat of prosecution. *Plunderbund*, 753 F. App'x at 366 (quoting *McKay*, 823 F.3d at 868–69). Put another way, Plaintiff cannot satisfy the injury-in-fact requirement by claiming that she fears prosecution due to the mere existence of the statutes at issue. *Id.* at 367; *see also Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d 602, 608 (6th Cir. 2008) ("With respect to the standing of First Amendment litigants, the Supreme Court is emphatic: Allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." (internal quotation marks omitted) (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972))), *cert. denied*, 555 U.S. 1171 (2009). The Sixth Circuit has found "a credible threat of prosecution" where:

> plaintiffs allege a subjective chill *and* point to some combination of the following factors: (1) a history of past enforcement against the plaintiffs or others; (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct; and/or (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action . . . .

8

*McKay*, 823 F.3d at 869 (emphasis in original) (citations omitted); *see also Plunderbund*, 753 F. App'x at 366–67. The district court may also "take into consideration a defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Plunderbund*, 753 F. App'x at 366–67 (quoting *McKay*, 823 F.3d at 869).

It is apparent that the second and third *McKay* factors do not support Plaintiff's pre-enforcement standing. Plaintiff admits in her deposition that she has never received any communication from any governmental entity related to her ballot pictures, let alone any enforcement warning letters. (R. 24-2, Kareem Depo., PageID# 189–191). And Plaintiff does not contend that either of the Ohio statutes at issue contains a mechanism to make enforcement easier or more likely, such as a private cause of action. Indeed, they do not. Therefore, turning to the first factor, the Court considers whether there is a history of past enforcement of the statutes against Plaintiff or others who have disseminated their ballot pictures, thereby establishing a credible threat of prosecution to support Plaintiff's standing to bring this action.

Plaintiff's testimony demonstrates that no governmental entity has ever threatened her with prosecution for any conduct related to taking, publishing, or disseminating pictures of her ballot, simply stating that "[t]he only threat [she has] had is through the Ohio Revised Code." (R. 24, PageID# 108; R. 24-2, Kareem Depo., PageID# 198–199). That being the case, Plaintiff attempts to establish a history of enforcement of the statutes against other Ohioans, even though she is apparently unaware of anybody in the state being prosecuted for publishing or disseminating a ballot picture. (R. 24-2, Kareem Depo., PageID# 197). The most that Plaintiff references is a single instance several years ago in which the Board of Elections, under the leadership of its former Director, requested that an individual remove an image of his or her marked ballot from social media. (R. 26-1, Perlatti Depo., PageID# 383, 392–393; R. 33,

9

PageID# 614). In that case, the Board of Elections did not refer the individual for prosecution or issue any warning letters, though the person did ultimately remove the image from social media. (R. 26-1, Perlatti Depo., PageID# 406).

On its own, Plaintiff's lone example of past enforcement does not establish a credible threat of prosecution under the statutes at issue. Moreover, the Director of the Board of Elections, Anthony Perlatti, testifies that since he became Director in 2019, the Board of Elections has not monitored or responded to the dissemination of ballot pictures. (*Id.*, PageID# 383). Perlatti also states that during his Directorship, the Board of Elections has not referred any cases involving pictures of ballots for prosecution, or issued any take-down or warning letters. (*Id.*, PageID# 407). Considering Plaintiff's single example with this context in mind, Plaintiff can only point to one instance that occurred several years ago, under a previous Board of Elections Director, that was never referred for prosecution or subject to any threat of enforcement proceedings. This one instance alone cannot have led somebody to believe that he or she faced a credible threat of prosecution under the Ohio statutes at issue.[3]

To bolster her argument, Plaintiff points to various public-facing statements made by Ohio governmental entities or officials that purportedly demonstrate a threat of prosecution under the statutes. First, the Board of Elections issued a Tweet on March 15, 2016, that said, "We love seeing all the voter pride, but know it is illegal in OH to post a picture of your voted

---

[3] The record also contains a media article regarding a city council candidate who had posted photographs of his absentee ballot on Facebook. (R. 26-2, Ex. 8, PageID# 518–520). According to the article, after the candidate had been told that the posts violated Ohio law, he removed the pictures from Facebook. (*Id.*). However, there is no indication in the article or elsewhere in the record of who told the person that his actions could violate Ohio law. (*Id.*; R. 26-1, Perlatti Depo., PageID# 380–382). Therefore, there is insufficient evidence to find that this is an example of any Ohio governmental entity enforcing the statutes at issue.

ballot! Show your sticker instead!" (R. 33, PageID# 613). Second, there is a directive in Ohio's *Election Official Manual*, published by the Secretary of State, which states, "Ohio law contains many prohibitions concerning the handling of ballots, including showing a voted ballot to another person . . . . Generally, such prohibited actions are punishable as a misdemeanor or felony." (*Id.*, PageID# 614). Finally, the Board of Elections has distributed pre-election briefing materials to the news media—and some of the Board's personnel have engaged in publicized media interviews—explaining that it is the Board's position that posting pictures of a completed ballot is unlawful. (*Id.*, PageID# 613; R. 26-2, West Depo., Exs. 2–7, PageID# 503–516).

Before considering these examples, it is instructive to consider the underlying facts in the Sixth Circuit's opinion in *McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016). In *McKay*, the plaintiff-appellant challenged a joint administrative order "prohibiting unauthorized possession or use of certain electronic devices in court related facilities" in a government building in Michigan. *Id.* at 864. The plaintiff-appellant had not requested or been denied permission to use a prohibited electronic device in the government building, and he never attempted to enter the building with such a device; therefore, he brought a pre-enforcement challenge to the order. *Id.* at 865. To establish a credible threat of prosecution, the plaintiff-appellant referenced signs that were posted in and around the government building, many of which stated that there were to be "NO Electronic Devices" on certain floors and in certain specified areas of the building without judicial permission and that a violation may result in contempt sanctions. *Id.* at 869–70. According to the plaintiff-appellant, these signs supported his argument that he faced a credible threat of prosecution. *Id.* The Sixth Circuit disagreed, explaining that these signs were distinguishable from warning letters that established a credible threat of prosecution in other cases because the signs "address[ed] the general public, not [the plaintiff-appellant] specifically

11

or any of his past conduct." *Id.*

Here, the public-facing statements cited by Plaintiff fail to establish a credible threat of prosecution for the same reasons as the signs at issue in *McKay*. For example, the March 2016 Tweet, the directive in the *Election Manual*, and the pre-election briefing materials and interviews that government personnel had with the media were not directed at any specific individual. These government statements are or were intended for the general public, and nobody reading them would believe that they were being personally threatened with prosecution.

Although Plaintiff has not satisfied the first three *McKay* factors, Plaintiff devotes much attention to her argument that she has established an injury-in-fact because Defendants have failed to disavow enforcement of the challenged statutes. (R. 33, PageID# 614–616). Plaintiff cites several cases that purportedly support the proposition that the government's failure to disavow enforcement, on its own, is sufficient to establish an injury-in-fact for pre-enforcement standing purposes. (*Id.*). Plaintiff's position overstates the law. All of these cases satisfied the injury-in-fact requirement because they established at least one factor, *in addition to* the government's failure to disavow enforcement. *See Susan B. Anthony List*, 573 U.S. at 164–65 (finding a credible threat of prosecution where there was a history of past enforcement of the challenged provision against petitioner, any person could initiate enforcement of the provision, the Ohio Elections Commission fielded dozens of complaints under the provision each year, *and* the state refused to disavow enforcement); *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 769 F.3d 447, 452 (6th Cir. 2014) (finding a credible threat of prosecution where any person could initiate enforcement of the challenged provision *and* the state refused to disavow enforcement of the provision as applied to plaintiff-appellant); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15–16 (2010) (finding a credible threat of prosecution

where the government had previously charged "about 150 persons" with violating the provision at issue *and* the government had not disavowed prosecution of the plaintiffs); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 301–02 (1979) (finding a credible threat of prosecution where the challenged statute had no intent requirement and prohibited activity that was "inevitable in free debate," making prosecution more likely, *and* the state had not disavowed prosecution).[4] Even assuming that Plaintiff has presented sufficient evidence showing that the

---

[4] In addition, Plaintiff's reliance on *Green Party of Tennessee v. Hargett*, 791 F.3d 684 (6th Cir. 2015) is also unavailing for a more fundamental reason. (R. 33, PageID# 611–612). In *Hargett*, the challenged statute required political parties to submit a loyalty oath affidavit. Consequently, the case is distinguishable because it involved a matter of compelled speech. *Hargett*, 791 F.3d at 695–96.

Plaintiff also cites to two other cases in which district courts have found that plaintiffs had pre-enforcement standing to challenge "ballot selfie" statutes, but each is distinguishable as explained below. (R. 33, PageID# 609).

The first, *Crooskston v. Johnson*, 370 F. Supp. 3d 804 (W.D. Mich. 2018), involved distinguishable procedural posture. There, the court denied a motion to dismiss, finding in part the plaintiff pleaded sufficient general allegations to withstand dismissal at the pleading stage. The case concerned a Michigan statute prohibiting an elector from "show[ing] his or her ballot . . . after the ballot has been marked." *Crookston*, 370 F. Supp. 3d at 808 (quoting Mich. Comp. Laws § 168.579). Importantly, conduct violating this provision constituted a misdemeanor and resulted in the forfeiture of the elector's ballot. *Id.* The crux of the plaintiff's challenge was that Michigan's laws violated the due process clause of the Fourteenth Amendment because they "provide[d] no opportunity to be heard before depriving Michigan voters . . . of the right to vote." *Id.* (internal quotation marks omitted). When considering whether the plaintiff had pre-enforcement standing despite the lack of history of the law's enforcement, the court explained that standing was proper because the "operations of the [challenged] laws" were "unclear," with no opportunity to be heard before a person's right to vote was forfeited—the heart of the plaintiff's case. *Id.* at 809, 812. Contrasting that with the case before this Court, Plaintiff is not challenging a statute that if enforced would deny her right to vote without meaningful due process; and despite full discovery, Plaintiff's alleged injury is not actual or imminent, but hypothetical.

The second case, *Hill v. Williams*, 2016 WL 8667798 (D. Colo. Nov. 4, 2016), regarded a challenge by multiple plaintiffs to a Colorado statute that prohibited the "photographing of one's own ballot and display of such photographs outside of polling places." *Hill*, 2016 WL 8667798, at *1. The court in *Hill* ultimately determined that the plaintiffs had pre-enforcement standing (*id.* at *4–6), but that case too is distinguishable on its facts rendering the *Hill* plaintiffs' standing argument stronger than Plaintiff's here. For example, the Colorado Secretary of State admitted to referring "a number" of complaints to the Denver District Attorney's office for prosecution, and

government has refused to disavow enforcement of the two statutes—which is itself in doubt considering the current Director of the Board of Elections has testified that the Board does not monitor or respond to "ballot selfie" posts—that on its own is insufficient to satisfy the injury-in-fact requirement of pre-enforcement standing. *Davis v. Colerain Twp.*, 51 F.4th 164, 174 (6th Cir. 2022) (holding that a defendant's refusal to disavow enforcement of the provision at issue "is just one data point among many on the question whether a credible threat of enforcement exists"); (R. 26-1, Perlatti Depo., PageID# 383).

While Plaintiff correctly points out that there is no requirement of "direct contact" between a government official and a plaintiff to establish standing (R. 33, PageID# 611), Plaintiff still carries the burden of satisfying the pre-enforcement standing factors laid out by the Supreme Court and Sixth Circuit, which Plaintiff has not done. Plaintiff has failed to establish an injury-in-fact, so the Court need not reach the remaining standing elements and holds that Plaintiff lacks Article III standing. As a result, the Court lacks jurisdiction over the instant action.

## V. Conclusion

Plaintiff's Motion for Summary Judgment (R. 27) is DENIED, and Defendants' Motions for Summary Judgment (R. 24; R. 26) are GRANTED. As a result, this action is DISMISSED with prejudice. IT IS SO ORDERED.

*s/ David A. Ruiz*
David A. Ruiz
United States District Judge

Date: March 31, 2023

---

one of the plaintiffs testified that she received a warning from the Attorney General's office that she violated the challenged statute. *Id.* at *5. No similar facts are present in this case.